IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM J. BUCK, #R-21689, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | )    CASE NO. 12-cv-273-JPG |
| | ) |
| C/O HARTMAN, C/O KURTZ, | ) |
| LT. LASHBROOK, LT. MIFFLIN, | ) |
| WARDEN REDNOUR, | ) |
| JACKIE MILLER, S.A. GODINEZ, | ) |
| and UNKNOWN DIETARY | ) |
| SUPERVISORS, | ) |
| | ) |
|       Defendants. | ) |

**MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff William J. Buck, an inmate at Pontiac Correctional Center ("Pontiac"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, based on incidents that occurred while Plaintiff was housed at Pontiac and Menard Correctional Center ("Menard"). Plaintiff is serving a 60 year sentence for murder. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief
>     may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from
>     such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**The Complaint**

Plaintiff's complaint names: Menard Correctional Officers Hartman, Kurtz, Lashbrook,[1] and Mifflin; Menard Warden Rednour; the Unknown Dietary Supervisor of Menard; the Unknown Dietary Supervisor of the Illinois Dept. Of Corrections ("IDOC"); Jackie Miller

---

[1] The current caption of the case lists a Defendant "Lashbrock." However, it is clear from Plaintiff's complaint that this Defendant's name is actually spelled "Lashbrook." Therefore, the Clerk shall be directed to correct the spelling.

(Administrative Review Board); and S.A. Godinez (Director of IDOC), who Plaintiff claims each violated his constitutional rights.

Plaintiff alleges that on July 20, 2011, he experienced an asthma attack while in his cell (Doc. 1, p. 6). Plaintiff stopped Defendant Kurtz and told him he was having trouble breathing (Doc. 1, p. 6). Defendant Kurtz left Plaintiff and returned thirty minutes later with Defendant Hartman, who told Plaintiff, "'I am not a doctor, and the joint is on lock-down, so drink some water cause you ain't going nowhere'" (Doc. 1, p. 6). Plaintiff then told Defendant Hartman, "please just call a nurse," to which Plaintiff claims Defendant Hartman made a "derisive" response (Doc. 1, p. 7). Plaintiff alleges that he continued to have trouble breathing during the ensuing days (Doc. 1, p. 7). Approximately one week after this encounter he was seen by a doctor and given a breathing treatment (Doc. 1, p. 7).

On October 17, 2011, Plaintiff claims Defendant Lashbrook transferred him to the segregation cellhouse, where he was placed in a cell with "a soiled mattress, hair balls all over the walls, stains on the wall, dirt caked up on the floor, rusted door, no ventilation, and urine [and] fecal odor in the cell" (Doc. 1, p. 7). The next day, Plaintiff received two disciplinary tickets (one from Defendant Lashbrook) with another inmate's number and cell number on them (Doc. 1, p. 8). Plaintiff claims that these tickets were used "as [a] subterfuge to keep [him] in segregation" (Doc. 1, p. 8). Plaintiff further claims that due to the conditions of his new cell, he subsequently developed a rash and sores (Doc. 1, p. 8).

In late October, 2011, Plaintiff went to "the adjustment committee" headed by Defendant Mifflin regarding the two previously-mentioned disciplinary tickets (Doc. 1, p. 8). Plaintiff claims that when he began explaining the mistakes on the tickets, Defendant Mifflin stated that

"[h]e didn't care what it said" and had Plaintiff escorted out of the room (Doc. 1, p. 9). Plaintiff subsequently received a summary of the adjustment committee's findings, which ordered Plaintiff to one year of segregation and transfer to Pontiac (Doc. 1, p. 9). Plaintiff asserts that he filed grievances to Defendants Rednour, Miller, and Godinez, who all "denied [him] relief capriciously" (Doc. 1, p. 9). Plaintiff claims that his transfer to Pontiac was in retaliation for grievances filed regarding the July 2011 and October 2011 incidents (Doc. 1, p. 11).

Finally, Plaintiff alleges that since his incarceration in June, 2003, he has experienced a variety of medical problems due to the "intensive soybean product-based foods" served at Menard and Pontiac (Doc. 1, p. 10). Plaintiff further states that Defendant Dietary Supervisors "use the food as a weapon for retaliation for staff assaults" (Doc. 1, p. 10). Plaintiff claims that he has alerted Defendant Godinez about his grievances with the food served in Menard and Pontiac, but that "no change has been implemented" (Doc. 1, p. 11).

Plaintiff requests a jury trial and an injunction forcing the IDOC to change their menu to include "items from the nutritional chart" (Doc. 1, p. 13). Additionally, Plaintiff requests compensatory, punitive, and nominal damages from each Defendant.

**Discussion**

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into four (4) counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Deliberate Indifference to a Medical Need**

Plaintiff alleges that Defendants Kurtz and Hartman violated his Eighth Amendment

rights by showing deliberate indifference to his asthma attack. The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm . . . . Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000)

(officers were on notice of seriousness of condition of prisoner with ruptured appendix because he "did his part to let the officers know he was suffering"). Further, a delay in providing medical treatment "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010) (discussing *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976); *Gayton v. McCoy,* 593 F.3d 610, 619 (7th Cir. 2010); *Edwards v. Snyder,* 478 F.3d 827, 832 (7th Cir. 2007) ("a plaintiff's receipt of *some* medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition")).

Finally, the Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

Plaintiff's asthma attack could plausibly be viewed as a serious medical need. The Seventh Circuit has repeatedly recognized "that asthma can be, and frequently is, a serious medical condition." *Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005). The only inquiry at this stage, then, is whether Defendants Kurtz and Hartman subjectively showed deliberate indifference (reckless disregard towards a substantial risk of harm).

Plaintiff has not pled sufficient facts to state a claim that Defendant Kurtz was deliberately indifferent to his asthma attack, as Plaintiff alleges that Defendant Kurtz went to get

his supervisor when Plaintiff informed him of his medical need. As Defendant Kurtz took affirmative steps to help Plaintiff, he cannot be found deliberately indifferent, and he shall be dismissed from this action with prejudice.

However, Plaintiff has stated a claim for deliberate indifference as to Defendant Hartman. Based on the statements made by Defendant Hartman in response to Plaintiff's asthma attack and his refusal to summon medical help, one could infer that Defendant Hartman meets the subjective prong of the deliberate indifference analysis. Thus, Plaintiff's claim for deliberate indifference against Defendant Hartman cannot be dismissed at this time.

**Count 2 - Due Process**

Plaintiff claims that Defendants Mifflin, Rednour, Miller, and Godinez violated his Fourteenth Amendment due process rights by moving him to segregation and subsequently transferring him to Pontiac (punishments imposed during an allegedly inadequate adjustment committee hearing).

In *Hanrahan v. Lane*, 747 F.2d 1137, 1140-41 (7th Cir. 1984), the Seventh Circuit held that the filing of false disciplinary charges by a correctional officer does not state a Fourteenth Amendment claim when the accused inmate is given a subsequent hearing on those charges in which the inmate is afforded the procedural protections outlined in *Wolff v. McDonnell*, 418 U.S. 539 (1974) (advance written notice of the charge, right to appear before the hearing panel, the right to call witnesses if prison security allows, and a written statement of the reasons for the discipline imposed). The Seventh Circuit reasoned that prisoners have a right "to be free from arbitrary actions of prison officials," *Hanrahan,* 747 F.2d at 1140, but determined that the procedural protections outlined in *Wolff* provided the appropriate protection against arbitrary

actions taken by a correctional officer such as issuing the inmate a fabricated conduct violation.

In the instant complaint, Plaintiff states that he was falsely accused of a "dangerous disturbance" and intimidation by Defendant Lashbrook. Plaintiff then was allegedly escorted out of his own disciplinary hearing before it was completed. Plaintiff's complaint suggests that he was denied one or more of the procedural protections in *Wolff*. However, even if Plaintiff was not afforded those procedural protections, he still may not have an actionable claim.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court of the United States rejected an argument that "any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause." *Id*. at 484. Furthermore, the Supreme Court held that while a state could create a liberty interest protected by the Due Process Clause, such interests were limited to cases where the discipline imposes an "atypical, significant deprivation" on the inmate in relation to the ordinary incidents of prison life - especially totally discretionary types of confinement such as administrative segregation and protective custody. *Id*. at 486.

In light of *Sandin*, the Seventh Circuit has observed that "the right to litigate disciplinary confinements has become vanishingly small." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.* at 1176.

This Court understands *Sandin* and *Wagner* as holding that even a prisoner's arbitrary confinement in disciplinary segregation, administrative segregation, or protective custody does not implicate any liberty interest – under either the Due Process Clause or state law – so long as

the confinement itself does not constitute an "atypical, significant deprivation." A particular confinement is "atypical [and] significant" only if the conditions under which the inmate is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner*, 128 F.3d at 1175. Subsequent opinions by the Seventh Circuit have explained that where the duration of confinement in segregation is relatively short, no liberty interest will be implicated. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 n.2 (7th Cir. 2009) (collecting cases).

### A - Segregation

Plaintiff claims that an allegedly inadequate adjustment committee hearing caused him to serve one year in disciplinary segregation. Following *Sandin* and *Wagner*, in order to state a claim for a due process violation arising in the context of disciplinary action, Plaintiff must allege an "atypical and significant deprivation." *See Sandin*, 515 U.S. at 486. As discussed in *Wagner*, one year of disciplinary segregation does not rise to the level of an atypical and significant deprivation in this case, as it does not exceed the remaining term of Plaintiff's incarceration (over forty years). *Wagner*, 128 F.3d at 1176. Thus, regardless of whether or not the *Wolff* protections were met during the October 2011 adjustment committee hearing, Plaintiff has failed to state a claim upon which relief may be granted. Therefore, this claim shall be dismissed with prejudice.

### B - Transfer

Similarly, Plaintiff takes issue with the adjustment committee's decision to transfer him to Pontiac. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v.*

*McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). *See also Meachum v. Fano*, 427 U.S. 215, 224 (1976) (the Constitution does not guarantee placement in a particular prison). As no liberty interest was implicated in Plaintiff's transfer, he cannot argue that an "atypical and significant deprivation" resulted from the October 2011 adjustment committee hearing. Therefore, this claim shall be dismissed with prejudice.

**Count 3 - Retaliation**

Plaintiff asserts that Defendants Rednour, Mifflin, and Lashbrook placed him in segregation and transferred him to Pontiac in retaliation for filing grievances. Even though, as explained in Count 2 above, some of these allegations would likely not be actionable in and of themselves, if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009) (discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper.")); *see also Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (per curiam) (retaliatory transfer of a prisoner); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory delay in transferring prisoner); *Cornell v. Woods*, 69 F.3d 1383, 1389 (8th Cir. 1995) (retaliatory discipline).

At issue here is whether Plaintiff experienced an adverse action or actions that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the Defendants' decision to take the retaliatory action. *Bridges*, 557 F.3d at 551. This is a question that cannot be resolved at the pleadings stage of this case. Nonetheless, Plaintiff has not alleged that Defendant Rednour took part in any decision to

transfer Plaintiff or place him in disciplinary segregation.  "The doctrine of *respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.'"  *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)).  *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v. Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981).

A denial of grievances does not equate with having personal responsibility for the alleged "adverse actions" taken by Defendants Mifflin and Lashbrook.  Thus, Defendant Rednour shall be dismissed without prejudice as to this count.  However, the Court is unable to dismiss Plaintiff's retaliation claim against Defendants Mifflin and Lashbrook at this time.

**Count 4 - Prison Conditions**

The Eighth Amendment prohibiting cruel and unusual punishment is applicable to the states through the Fourteenth Amendment.  It has been a means of improving prison conditions that were constitutionally unacceptable.  *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994).  As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime.  *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  The Constitution also prohibits punishment that is totally without penological justification.  *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic

human needs like food, medical care, sanitation, and physical safety. *Rhodes,* 452 U.S. at 346; *See also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires that a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32

F.3d 1024, 1032 (7th Cir. 1994).  The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm.  *Farmer*, 511 U.S. at 842.  A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm.  *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992).  It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

### A - Unsanitary Cell

Plaintiff alleges that Defendant Lashbrook infringed upon his Eighth Amendment rights by placing him in a cell that Plaintiff claims was "unsanitary."  Specifically, Plaintiff asserts that his cell had a foul odor, hairballs and stains on the walls and floor, dirt caked on the walls, a rusted door, and no ventilation.  Plaintiff further suggests that he suffered from a rash due to his "soiled mattress."  For a claim of unsanitary conditions,

> [N]either negligence nor strict liability is the appropriate inquiry in prison-conditions cases. . . . prisoners who contest the conditions of their confinement under the eighth amendment must establish that their custodians either established the conditions to inflict wanton pain or are deliberately indifferent to whether the conditions have these effects.  The eighth amendment is concerned with "punishment", and . . . showing a culpable mental state is essential in establishing that conditions of confinement are part of the "punishment".

*Steading v. Thompson*, 941 F.2d 498, 499-500 (7th Cir. 1991) (citing *Wilson v. Seiter*, 501 U.S. 294 (1991)).  Further, conditions such as poor ventilation do not fall below "the minimal civilized measure of life's necessities," absent medical or scientific proof that such conditions exposed a prisoner to diseases or respiratory problems which he would not otherwise have suffered.  *Dixon v. Godinez,* 114 F.3d 640, 645 (7th Cir. 1997) (*quoting Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994)).

Plaintiff has failed to allege sufficient facts to support a claim that his cell conditions fell below "the minimal civilized measure of life's necessities." *See Farmer*, 511 U.S. at 833-34. While Plaintiff alleges a variety of conditions that may have made his time in that cell uncomfortable or unpleasant, "hairballs" and stains on the wall and "dirt caked on the floor" do not rise to the level of an Eighth Amendment claim. Plaintiff also alleges a "urine/fecal odor in his cell." In other cases, prolonged exposure to human waste has implicated the Eighth Amendment. *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls). However, nowhere in his complaint does Plaintiff actually claim that he was exposed to human waste; rather, his allegations are that he was subjected to an unpleasant odor. Therefore, Plaintiff has not stated a claim upon which relief may be granted for an Eighth Amendment violation, and this claim shall be dismissed with prejudice.

### B - Inadequate Diet

Plaintiff claims that Defendants Rednour, Miller, Godinez, and Unknown Dietary Supervisors have subjected him to cruel and unusual punishment by providing him with an inadequate diet. Prisons are obligated to provide "nutritionally adequate food." *Jacobs v. Frank*, 225 F. App'x 397, 399 (7th Cir. 2007). Plaintiff's complaint alleges that he is "unable to maintain a healthy weight" due to Menard's "intensive soybean product based foods." (Doc. 1, p. 10). However, Plaintiff offers no specifics as to his allegation that he could not maintain a "healthy weight." His statement that he weighs "160 something" pounds with a height of 6'5"

does not necessarily lead to a conclusion that he is malnourished.[2]  Furthermore, he does not explain his claim that he is unable to drink the skim milk provided with prison meals.  Nor does he provide sufficient facts about his other alleged "health issues" to raise an inference that he is suffering physical ailments as a direct result of the prison diet.

These allegations are not sufficient to state a claim that Menard's and Pontiac's dietary plans subjected Plaintiff to conditions that exceeded contemporary bounds of decency.  Furthermore, Plaintiff does not allege that Defendants knew that Plaintiff was being nutritionally deprived by the prison menu.  In his complaint, Plaintiff alleges that only Defendant Godinez and "Inmate Issue Board members" were made aware of the adverse affects the prison diet was allegedly having on Plaintiff's weight.

In Defendant Godinez's case, the doctrine of respondeat superior does not apply to § 1983 actions.  In order to be liable, a defendant must be alleged to be personally responsible for the constitutional violation.  *See Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).  Where a defendant has been alleged to have directed the conduct or to have given knowing consent to the conduct which caused the constitutional violation, that defendant has sufficient personal involvement to be responsible for the violation, even though that defendant has not participated directly in the violation.  *Chavez*, 251 F.3d at 652; *McPhaul v. Bd. of Comm'rs of Madison Cnty.,* 226 F.3d 558, 566 (7th Cir. 2000).  A defendant in a supervisory capacity may then be liable for "deliberate, reckless indifference" where he or she has purposefully ignored the misconduct of his/her

---

[2]The IDOC website lists Plaintiff's current weight as "178 lbs."  *Inmate Search*, Illinois Department of Corrections (last visited June 11, 2012), http://www2.illinois.gov/idoc/Offender/Pages/InmateSearch.aspx.

subordinates. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (discussing *Chavez*, 251 F.3d at 651 ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.")).

Even though Defendant Godinez was placed on notice of Plaintiff's grievances with the prison diet, Plaintiff has not alleged sufficient facts to suggest that Defendant Godinez could be liable for Plaintiff's failure to receive an adequate diet. Plaintiff may believe that any prison employee who knows (or should know) about his problems has a duty to fix those problems. That theory is in direct conflict with the well-established rule that "public employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). *See also Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978); *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (doctrine of respondeat superior does not apply to § 1983 actions). Defendant Godinez, as director of the IDOC, simply cannot be held liable for every alleged misstep taken by one of his employees, even if he has been alerted to the situation.

In addition, Plaintiff has failed to allege that Defendants Rednour, Miller, and Unknown Dietary Supervisors intended or even knew that Plaintiff would suffer any weight loss as a result of the soy diet, allegedly inadequate portions, and skim milk. Accordingly, Plaintiff's claim that the prison diet constituted cruel and unusual punishment must be dismissed without prejudice.

**<u>Severance</u>**

Counts 1 and 3 of Plaintiff's complaint seek relief against, respectively, Defendant Hartman and Defendants Lashbrook and Mifflin. The claim asserted in Count 1 does not arise from the same transaction, occurrence, or series of transactions or occurrences as Count 3. The Seventh Circuit emphasizes that separate, unrelated claims belong in different suits. *George v.*

*Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  On review of the complaint, the claim against Defendant Hartman presented in Count 1 of the complaint is not sufficiently related to the claim against Defendants Lashbrook and Mifflin in Count 3 so as to allow them to proceed together in one lawsuit.

Plaintiff is **ADVISED** that the Court is inclined to sever Count 3.  If this claim is severed, it would be removed from this case and opened in its own new case.  A new case number would be assigned for this claim, and an additional filing fee would be assessed for the new case.

Because the imposition of an additional filing fee may impose a financial burden on him, Plaintiff is **FURTHER ADVISED** that he may avoid severance (and the imposition of an additional filing fee) by filing a motion to voluntarily dismiss Count 3 without prejudice.  Such a motion must be filed within 45 days of the date of entry of this order.  Before filing that motion, Plaintiff shall consider whether he could re-file the dismissed claim without running afoul of the applicable two-year statute of limitations for civil rights actions in Illinois.

## Summary

The Clerk of the Court is **DIRECTED** to change Defendant Lashbrock to Defendant Lashbrook, to reflect the correct spelling of this individual's name.

**IT IS HEREBY ORDERED** that **COUNT 2** fails to state a claim upon which relief may be granted and is **DISMISSED** with prejudice.  **COUNT 4** fails to state a claim upon which relief may be granted and is **DISMISSED** without prejudice.  **DEFENDANT KURTZ** is **DISMISSED** from this action with prejudice.  **DEFENDANTS MILLER**, **GODINEZ**, **REDNOUR** and **UNKNOWN DIETARY SUPERVISORS** are **DISMISSED** from this action

without prejudice.

**IT IS FURTHER ORDERED** that within 45 days of the date of entry of this order, (on or before August 2, 2012) Plaintiff may file a motion to voluntarily dismiss **COUNT 3** from this action.

**IT IS FURTHER ORDERED** that if Plaintiff does not voluntarily dismiss **COUNT 3** from this action within the above deadline, the Court will sever this claim into a new action. A new case number will be assigned for this claim, and an additional filing fee will be assessed for the new case.

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   June 18, 2012**

　　　　　　　　　　　　　　　　　　　　*s/J. Phil Gilbert*
　　　　　　　　　　　　　　　　　　　　**United States District Judge**